**Sharon KNIE, Appellant,**

v.

**Dr. Walter PISKUN, M.D., Southwest Neuroscience Institute, and Panhandle Surgical Hospital, Appellees.**

**No. 07–99–0277–CV.**

Court of Appeals of Texas, Amarillo.

April 25, 2000.

Rehearing Overruled May 17, 2000.

Betty Newby, Borger, for appellant.

Gibson, Ochsner & Adkins, Todd O. Lafferty, Amarillo, Peterson, Farris, Doores & Jones, Barry Peterson, Amarillo, for appellee.

Before BOYD, C.J., and QUINN and REAVIS, JJ.

JOHN T. BOYD, Chief Justice.

This is an appeal from a dismissal of medical malpractice claims for failure to provide expert reports in support of those claims as required by the Medical Liability and Insurance Improvement Act (the Act), Tex.Rev.Civ. Stat. Ann. art. 4590i (Vernon Pamph.1999). Appellant Sharon Knie (Knie) now challenges the trial court's action in 21 points of error. Finding no reversible error in the trial court's judgment, we affirm.

Knie went to Dr. Walter Piskun (Piskun) in 1995 to treat a herniated disk. After Piskun performed back surgery in September 1995, Knie eventually became paralyzed from the chest down. Knie filed a petition pro se on December 2, 1997, asserting claims against Piskun, Southwest Neuroscience Institute (Southwest), Texas Back Institute, and Columbia Panhandle Surgical Hospital (the Hospital). Included in this petition was an affidavit of indigence. The petition did not allege the manner in which the defendants were negligent. The case was assigned docket number 84,322–D. About August 1998, Knie hired an attorney to represent her. The defendants were not served until January 1999.

Piskun and Southwest filed an answer raising special exceptions, asserted the defense of limitations, the limitations on damages in the Act, and challenging the constitutionality of any award of exemplary damages. They also challenged her affidavit of indigence. The Hospital filed a general denial.

On February 18, 1999, Piskun and Southwest moved for dismissal with prejudice on the ground that Knie had failed to file an expert report as required by Section 13.01(d) of the Act. These defendants also sought an award of attorney's fees. Within a few days, the Hospital moved for dismissal on the same basis. On March 8, 1999, Knie filed a motion stating that her failure to file an expert's report was not intentional or the result of conscious indifference, but the result of accident or mistake and asked the trial court for permission to file her expert's affidavit within 30 days "in the interest of justice and fairness." Knie also filed a response to a motion to dismiss for failure to file a cost bond. However, this record does not contain a motion seeking dismissal on that ground.

On March 11, 1999, the trial court held a hearing on these motions. Knie, Piskun, and Southwest appeared through counsel. Texas Back Institute did not appear and counsel for Piskun represented that Texas Back Institute had not been served. Knie argued that section 13.01(g) of the Act authorized the court to grant her an additional 30 days to file an expert report because her failure to file such report was not intentional or the result of conscious indifference, but was the result of her mistake as to the applicable law. Piskun and Southwest argued that even if the failure to file an expert report was the result of mistake, the 30–day "grace period" provided by Section 13.01(g) could only extend the 180–day deadline by the 30 days immediately following the 180th day. The trial court granted defense motions to dismiss with prejudice by two written orders dated March 22, 1999. The order dismissing claims against Piskun and Southwest also severed the claims against them, assigned a new cause number, 85,990–D, and denied any relief not expressly granted.

On April 21, 1999, Knie filed a motion in cause number 84,322–D, but styled with the names of all three defendants, to reinstate or for new trial, arguing the bond and expert report requirements of the Act are violative of her federal constitutional

rights to free speech, equal protection, due process and of Article I, Section 29 of the Texas Constitution. This motion was overruled by written order on June 21, 1999. On June 8, 1999, Knie filed a motion to reopen the evidence or to deem her expert's affidavit timely filed. This motion also contained the names of all three defendants but only one cause number, 84,-322–D. The record does not reflect a ruling on this motion. She timely filed her notice of appeal June 21, 1999.

On December 10, 1999, Piskun and Southwest sought dismissal of the appeal as to them because Knie failed to perfect appeal in the severed cause. We overruled that motion but, in a written opinion issued January 3, 2000, required Knie to amend her notice of appeal. She filed her amended notice February 1, 2000.

Knie's 21 points of error fall into one of four categories. Points 1, 2, 4, 16 and 20 assign error to the trial court's failure to account for the indigence of her and her counsel. She challenges the trial court's application of the requirements of the Act in points 3, 5, 12, 13, 14, 15, 17b [1] and 21. Points 6, 7, 8, 9, 10, 11, and 18 challenge the constitutionality of the expert report requirement of the Act. She also questions this court's jurisdiction in point 17a on the basis that the trial court did not rule on her motion to reopen the evidence in the hearing on the motion for new trial.

■ We initially address the jurisdictional issue raised in Knie's first point numbered 17. If, as Knie contends, this court lacks jurisdiction over this appeal, our authority over this appeal is limited to dismissal. Knie's June 9, 1999 motion asked the court to reopen the evidence from the hearing on her motion for new trial or to deem the affidavit of her expert timely filed. This motion was derivative of her motion for new trial. Consequently, the trial court's order expressly overruling her motion for new trial was also disposi-

tive of the subsidiary June 9 motion. We therefore overrule Knie's point 17a.

■ Knie has also challenged the finality of the judgment by a motion filed the day of oral argument. That motion asserts that the trial court's judgment failed to dispose of her claim for Piskun's breach of fiduciary duty or fraudulent concealment for failing to inform her of a mistake committed during her surgery. An examination of the record shows that no such claim was ever asserted in the trial court. Knie's two page petition merely alleged negligence on the part of the defendants. The trial court's failure to dispose of a claim that was never asserted in that court does not make its judgment interlocutory.

■ Although not addressed by the parties, because we are obligated to determine, *sua sponte*, issues affecting our jurisdiction over an appeal, *New York Underwriters Ins. Co. v. Sanchez*, 799 S.W.2d 677, 678 (Tex.1990), another jurisdictional issue merits discussion. Unless an exception applies, a final judgment disposing of all of the parties and issues before the trial court is a prerequisite to an appeal. *North East Independent School District v. Aldridge*, 400 S.W.2d 893, 895 (Tex.1966). Because the record before us makes no disposition of Knie's claims against Texas Back Institute, we must determine if that omission renders the trial court's orders of dismissal interlocutory.

Rule 161 of the Texas Rules of Civil Procedure provides that where only some defendants are served, a plaintiff may dismiss the unserved parties without prejudice, obtain new service of process, or obtain a severance. Knie did not pursue any of those options. This procedural posture is not without precedent. In *Osborne v. St. Lukes Episcopal Hosp.*, 915 S.W.2d 906, 909 (Tex.App.—Houston [1st Dist.] 1996, writ denied), the trial court rendered

---

1. Knie's brief contains two points numbered 17, which we denominate 17a and 17b.

a purportedly final summary judgment in favor of nine defendants. Although the judgment made no disposition of eight other defendants on whom service was not obtained, the First Court of Appeals held the judgment final, stating the applicable rule that "the case stands as if there had been a discontinuance as to the parties not served." *Id.* at 909 (citing *Youngstown Sheet & Tube Co. v. Penn,* 363 S.W.2d 230, 232 (Tex.1962); *Moody v. Smoot,* 78 Tex. 119, 14 S.W. 285, 287 (1890); and *Ballard v. Portnoy,* 886 S.W.2d 445, 446 (Tex. App.—Houston [1st Dist.] 1994, no writ)). We find the rule equally applicable here and hold the trial court's judgment disposing of claims against the properly served defendants is final.

■ We now consider Knie's remaining points. Her first group of points, 1, 2, 4, and 16, assign error to the trial court's failure to account for the indigence of her and her counsel. Her first point contention is that the trial court erred in failing to rule on appellees' contest to her affidavit of indigence before ruling on the motion to dismiss. This is so, she contends, because the indigence of Knie and her counsel excused her from the expert report requirement of section 13.01(d) of the Act. We disagree.

Section 13.01(a) of the Act requires that within 90 days of filing suit, a plaintiff file a bond or cash deposit in the amount of $5,000 for each health care provider named as a defendant or provide defense counsel with an expert report for each health care provider. Section 13.01(d) requires that an expert report be filed within 180 days of filing suit. Section 13.01(o) authorizes a party who is unable to afford a cost bond or cash deposit, and is proceeding without an attorney, to file an affidavit in lieu of the bond or cash deposit otherwise required by the statute. The statute contains no corollary provision excusing an indigent plaintiff from the expert report requirement. Consequently, Knie's status as an indigent would not relieve her of the requirement to file an expert report, so the

trial court's determination of that question was irrelevant to its dismissal for failure to file the required report. We overrule Knie's first point.

Knie's second point assigns error to the trial court's dismissal of her claims for failing to file her expert reports within 90 days of filing her petition because she was indigent. We must overrule this point because the record affirmatively shows that the basis on which appellees moved for dismissal was Knie's failure to file the expert reports within 180 days of her original petition as required by section 13.01(d) of the Act, not the failure to file such reports within 90 days as permitted by section 13.01(a).

■ Knie's fourth point merely questions whether dismissal was proper when her attorney was unable to pay for an expert witness and other costs. Her three-sentence argument in support contains no citation to authority or substantive argument explaining how the trial court erred. These omissions amount to a waiver of her complaint. *Lewis v. Deaf Smith Elec. Coop., Inc.,* 768 S.W.2d 511, 512–13 (Tex.App.—Amarillo 1989, no writ.).

■ In her sixteenth point, Knie assigns error to the trial court's denial of her request to have Potter County pay her expert witness expenses and related litigation expenses. Her argument in support consists of citation to cases discussing the appointment of counsel in criminal cases and two law review articles entitled *Free Access to the Courts,* cited as Iowa Law Review, 56, 249 and *On Protecting the Poor Through the Fourteenth Amendment,* 83 Harvard L.Rev. 7 (1969). She asserts that she "has sworn to repay Potter County if she wins" and if she loses, "the public's belief in fair courts outweighs any expenses that Potter County might have to pay."

Knie's argument fails to explain how the underlying reason for the appointment of defense counsel in criminal cases would apply to this civil action. The basis for

requiring the State to provide counsel to indigent criminal defendants is their right under the federal constitution to have effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 794–96, 9 L.Ed.2d 799 (1963). There is no corresponding constitutional right to counsel in civil proceedings. *Travelers Indem. Co. of Connecticut v. Mayfield,* 923 S.W.2d 590, 594 (Tex.1996). Moreover, one public policy basis for providing defense counsel to indigents in criminal cases is that the State is the party prosecuting the action. Here, Knie seeks to have the government provide financial support to one party in a private dispute.

■ Because the appointment of counsel in civil cases is analogous to Knie's request to have the county pay for her expert witness, we consider how the legislature has addressed that issue. Section 24.016 of the Texas Government Code Annotated (Vernon 1988), authorizes a trial court to appoint counsel for an indigent party in a civil case. The exercise of that authority is committed to the discretion of the trial court. Our supreme court has held that only in "some exceptional cases, public and private interests at stake are such that the administration of justice may best be served by appointing a lawyer to represent an indigent civil litigant." *Travelers Indem.,* 923 S.W.2d at 594. *See also Coleman v. Lynaugh,* 934 S.W.2d 837, 839 (Tex.App.—Houston [1st Dist.] 1996, no writ). Knie has failed to show that there is anything so exceptional about this case that would require the government to intervene with financial support. We overrule her sixteenth point.

Knie's twentieth point is based on the argument that the trial court erred in applying section 13.01 of the Act instead of Rule 145 of the Rules of Civil Procedure. Because Rule 145 governs the procedure for indigent parties to avoid filing security for court costs by filing an affidavit, it is inapplicable to the requirements of the Act. Knie also challenges the constitutionality of sections 13.01(p) and (q) as violative of the separation of powers doctrine because by those sections "[t]he legislature has userped the Supreme Court's rule-making powers." This argument ignores the clear language of our state constitution declaring that any procedural rules adopted by our supreme court must yield to "the laws of the state." Tex. Const. Ann. art. 5, § 21. We overrule Knie's twentieth point.

■ We next consider Knie's challenges to the trial court's application of the reporting requirements of the Act. Her points number 3, 15 and 17b assign error to the trial court's dismissal of her claims for failing to file the expert reports within 180 days as required by the Act. We review the trial court's dismissal order with the abuse of discretion standard. *Wood v. Tice,* 988 S.W.2d 829, 830 (Tex.App.—San Antonio 1999, pet. denied). In applying this standard, we defer to the trial court's factual determinations but review questions of law *de novo. Id.; see also Johnson v. City of Fort Worth,* 774 S.W.2d 653, 656 (Tex.1989) (describing statutory construction as question of law). While acknowledging she failed to file the reports within the allotted time, Knie argues the trial court erred in failing to extend the time for filing as required by subsections (f) and (g) of section 13.01. Appellees respond that the granting of an extension under section 13.01(f) is wholly within the trial court's discretion and Knie failed to satisfy the requirements of section 13.01(g).

■ Section 13.01(f) provides that a court "may, for good cause ... extend any time period specified in Subsection (d) ... for an additional 30 days." Applying the established rules of statutory construction, the word "may" makes the extension authorized by subsection (f) permissive rather than mandatory. *Roberts v. Medical City Dallas Hosp.,* 988 S.W.2d 398, 402 (Tex.App.—Texarkana 1999, pet. denied).

A plaintiff denied such an extension must show a clear abuse of discretion. This is not established simply on a showing of good cause for the extension. *Schorp v. Baptist Memorial Health System*, 5 S.W.3d 727, 732 (Tex.App.—San Antonio 1999, no pet. h.). We need not determine whether the trial court clearly abused its discretion because we agree with the Texarkana Court of Appeals' holding that the 30–day extension authorized by subsection (f) can only extend the deadline to 210 days from the initiation of the suit. Because more than 210 days had passed before Knie requested an extension, subsection (f) was inapplicable.

Subsection (g) provides that a court "shall grant a grace period of 30 days" if, after a hearing, the court finds that the failure to comply with the 180–day deadline was not intentional or the result of conscious indifference but was the result of accident or mistake. The statute also defines a motion for relief under subsection (g) timely if filed before any hearing on a motion to dismiss for failure to comply with the report requirement of subsection (d). Unlike subsection (f), a grace period under subsection (g) is mandatory if the movant satisfies the subsection's two elements, 1) the failure to filed the required reports was due to accident or mistake, and 2) it was filed before a hearing on a defense motion to dismiss.

Although Piskun argued to the trial court that it could not authorize the report to be filed after 210 days, there is nothing in the language of subsection (g) which expressly or impliedly limits the 30–day "grace period" to the 30 days immediately following the 180–day deadline. The holding in *McClure v. Landis*, 959 S.W.2d 679 (Tex.App.—Austin 1997, pet. denied), supports the conclusion that the grace period provided by subsection (g) is not so limited. In *McClure*, the appellate court found subsection (g) applicable even though the reports had not been provided after 249 days. *Id.* at 682. *See also Broom v. MacMaster*, 992 S.W.2d 659, 663 (Tex.App.—

Dallas 1999, no pet.); *Horsley–Layman v. Angeles*, 968 S.W.2d 533 (Tex.App.—Texarkana 1998, no pet.) (extension should have been granted when report sent 246 days after suit was filed). This determination also resolves Knie's twelfth point asking whether the additional periods for filing expert reports authorized by subsections (f) and (g) must be sought within 30 days after the 180–day deadline.

Because the record establishes that Knie filed her motion for a 30–day grace period before the hearing on Piskun's motion to dismiss and was therefore timely, our discussion must focus on their first element of subsection (g), whether Knie's failure was not intentional or the result of conscious indifference but rather the result of accident or mistake.

In *McClure, supra*, the Austin Court of Appeals held that the standard set out in section 13.01(g) is derived from Rule 165a(3) of the Rules of Civil Procedure governing reinstatement from dismissals for want of prosecution and *Craddock v. Sunshine Bus Lines*, 134 Tex. 388, 133 S.W.2d 124, 126 (Tex.Comm.App.1939). It found cases construing those standards relevant to determining the applicability of subsection (g). 959 S.W.2d at 681. *See also Nguyen v. Kim*, 3 S.W.3d 146, 152 (Tex.App.—Houston [14th Dist.] 1999, no pet. h.); and *Wood*, 988 S.W.2d at 832. We review the trial court's decision on this issue for an abuse of discretion. *Nguyen*, 3 S.W.3d at 151.

In her March 8, 1999 motion seeking leave to file an expert report, Knie stated she failed to file the report "due to misunderstanding this requirement of the Medical Malpractice Act. Had [appellant] known that the Act required the affidavit of an expert to be filed within 180 days she would have complied." This motion was verified by Knie, but not by her attorney. At the hearing on the competing motions to dismiss and for extension of time, the attorney offered this explanation: "The 180 day requirement, your honor, I will take responsibility for that, I didn't realize

that she had to also file the affidavit in addition to the bond. We are in the process of retaining an expert." Knie's attorney also stated, "we have talked to a doctor, we just don't have the affidavit yet. But we do have opinions that the acts and omissions of the defendants were the proximate cause of her paralysis."

A threshold question is whether the motion, not verified by Knie's attorney, and the unsworn statements given by the attorney at the hearing is evidence that could be considered by the trial court. Normally, an attorney's statements must be under oath to be considered evidence. *Banda v. Garcia,* 955 S.W.2d 270, 272 (Tex.1997). The opponent of the testimony, however, can waive the oath requirement by failing to object when the opponent knows or should know that an objection is necessary. *Id.* As in *Banda,* the evidentiary nature of Knie's attorney's statements was apparent. She was seeking to prove how the failure to file the required reports was the result of accident or mistake. Defense counsels' failure to object waived the oath requirement.

Piskun argues that Knie has failed to meet her burden to show the failure to file the reports was not intentional or the result of conscious indifference but as insufficient and contradictory. He initially asserts that Knie's statement that she had not filed the expert reports due to a lack of money to pay for an expert contradicts her argument that, as he characterizes it, she was ignorant of the expert report requirement of the Act. A review of the entire record leads to the conclusion that the explanations offered were for different time periods. Knie's attorney argued her misunderstanding of the application of section 13.01(d) to indigents was offered to explain her failure to file the reports up until appellees filed their motions to dismiss. Her failure to obtain and file reports from the date of the motions until the hearing on those motions was due to her inability to pay to hire an expert.

While we find no conflict in those explanations, we also recognize the record shows Knie was acting pro se for more than 180 days after the suit was filed. Consequently, the attorney's misunderstanding of the application of section 13.01(a) to indigents could not explain the failure to file the expert reports within 180 days after suit was filed. Knie's motion for extension of time does not support a finding that she, during the time she was acting *pro se,* was mistaken as to the application of section 13.01. It shows, rather, that she was wholly unaware of the statute.

Appellees argue that neither ignorance or misinterpretation of the law can excuse the failure to meet a deadline. They rely on *Nguyen v. Kim; Allstate Insurance Co. v. King,* 444 S.W.2d 602, 605 (Tex.1969); *West Columbia Nat'l Bank v. Griffith,* 902 S.W.2d 201, 207–08 (Tex.App.—Houston [1st Dist.] 1995, writ denied); and *Furr v. Furr,* 721 S.W.2d 565, 566 (Tex.App.—Amarillo 1986, no writ). Appellees also argue that *Nguyen* and *Broom* are factually similar and dispositive of Knie's argument.

In *Broom,* the plaintiff's explanation for not filing the reports failed to even allege accident or mistake but merely amounted to a claim that he was busy and did not have adequate time. 992 S.W.2d at 664. *Broom* has no application to the facts before us.

The plaintiffs in *Nguyen* filed suit in March 1997. In May 1997, defense counsel wrote to plaintiffs' counsel reminding them of the deadlines under the Act. In June, just before the cost bond or expert report was required, plaintiffs' counsel filed an affidavit that he had a written expert report, but it was not filed with the court or provided to defense counsel. On June 17, the defendant filed a motion to compel filing of the cost bond. The 180th day arrived September 11, 1997, but no report was filed. On October 10, 1997, the plaintiffs sought leave to file the reports late, asserting the failure to file the reports was the result of their mistake, spe-

cifically that their counsel was unaware of the requirement for filing expert reports with the court. 3 S.W.3d at 153. The court of appeals found the letter from defense counsel pointing out the expert report requirement, the motion to compel filing of a cost bond, and plaintiff's June affidavit discussing the expert report requirement contradicted the claims of plaintiffs' counsel that he was unaware of that requirement. *Id.* at 154. Here, appellees have failed to point to any similar conduct on the part of counsel for either side that contradicts the assertion of Knie that she was unaware of the requirement or that her attorney was mistaken as to the application of the expert report requirements of section 13.01 to indigents.

We must also seek to reconcile the cases cited in *Nguyen* holding that ignorance of the law cannot excuse missing a deadline with cases holding a mistake of law can satisfy the accident or mistake requirement of *Craddock*. The first case cited in *Nguyen* was *Allstate Insurance Co. v. King*, 444 S.W.2d 602, 605 (Tex.1969), where our supreme court held ignorance of six-month filing deadline for workers' compensation benefits did not excuse missing that deadline. *Id.* at 605. That case, however, was not testing the plaintiff's excuse against language similar to that of subsection (g).

In *West Columbia Nat'l Bank v. Griffith*, 902 S.W.2d 201 (Tex.App.—Houston [1st Dist.] 1995, writ denied), the court denied relief by a bill of review proceeding where the party's intentional decision not to answer a suit was based on his misinterpretation of the law. *Id.* at 207. That holding is also inapplicable here because entitlement to a bill of review requires the party seeking that relief to show they were free from fault or negligence. *Id.* at 206. *See also Caldwell v. Barnes*, 975 S.W.2d 535, 537 (Tex.1998). In contrast, showing that the failure to perform some act was due to accident or mistake often requires a

party to show they were negligent. *See Ivy v. Carrell*, 407 S.W.2d 212, 213 (Tex. 1996); *Ferguson & Co. v. Roll*, 776 S.W.2d 692, 697 (Tex.App.—Dallas 1989, no writ); Pohl and Hittner, Judgment by Default in Texas, 37 SW. L.J. 421, 433. In *Furr v. Furr*, 721 S.W.2d 565, 566 (Tex.App.— Amarillo 1986, no writ), this court was faced with the question of whether a party had provided a "reasonable explanation" for their failure to timely file an affidavit in lieu of cost bond. We wrote "an obvious failure to read the applicable, easily available rules setting out the requisite steps necessary to perfect an appeal shows a lack of proper diligence and falls short of establishing [a] reasonable explanation." 721 S.W.2d at 567. *C.f. Roberts*, 988 S.W.2d at 403.

Because the holding in *Nguyen* was that the record controverted counsel's asserted ignorance of the requirements of section 13.01(a), the court's statement that ignorance of the law is no excuse is dicta. The cases it cited for that proposition were not applying language like that used in section 13.01(g) and *Craddock* and only considered a party or counsel's ignorance of the law rather than their misunderstanding or misinterpretation of the law.

In *Bank One, Texas, N.A. v. Moody*, 830 S.W.2d 81, 84 (Tex.1992), the court expressly held that a mistake of law, in contrast to ignorance of the law, *can* be sufficient to meet the accident or mistake standard set out in *Craddock*.[2] That rule has been applied by several Texas courts. *See Angelo v. Champion Restaurant Equip. Co.*, 713 S.W.2d 96, 97 (Tex.1986) (mistaken belief that paying underlying claim was sufficient answer); *Costley v. State Farm Fire and Cas. Co.*, 894 S.W.2d 380, 383 (Tex.App.—Amarillo 1994, writ denied); *Texas State Bd. of Pharmacy v. Martinez*, 658 S.W.2d 277, 280–81 (Tex. App.—Corpus Christi 1983, writ ref'd n.r.e.) (mistaken belief that exclusive venue rested in county other than the county

---

2. Even as early as 1858, our courts recognized mistakes of law as sufficient grounds

for a new trial. *See Dowell v. Winters*, 20 Tex. 793 (1858).

of suit); *State v. Sledge*, 982 S.W.2d 911, 915 (Tex.App.—Houston [14th Dist.] 1998, no pet.) (misinterpretation of effect of trial setting notice was mistake justifying new trial after default). *Roberts v. Medical City Dallas Hosp., Inc.*, 988 S.W.2d 398 (Tex.App.—Texarkana 1999, pet. denied), was a medical malpractice case where the plaintiff failed to file an expert's report due to his misunderstanding of the nature of the document required by the statute. The court found his failure to file the report was the result of accident or mistake because he knew an expert report was required but, due to his failure to read the applicable statute, the document he sought to file failed to satisfy the statute. *Id.* at 403. The court held the attorney's failure to read the statute, while "certainly negligen[t]," did not demonstrate conscious indifference. *Id.*

Not every mistake that is arguably a mistake of law will satisfy the standard. For example, in *Carey Crutcher, Inc. v. Mid–Coast Diesel Services, Inc.*, 725 S.W.2d 500, 502 (Tex.App.—Corpus Christi 1987, no writ), *overruled on other grounds by State Emp. Workers' Comp. Division v. Evans*, 889 S.W.2d 266, 268 (Tex.1994), the defendant's attorney chose not to answer a suit because he believe it was filed against a party who was protected by a bankruptcy stay. In fact, suit was filed against another party and his mistake was due to his failure to read the petition. The court held the defendant failed to establish a lack of conscious indifference. *Id.*

Because appellees failed to contradict Knie's evidence that her attorney was mistaken as to the application of section 13.01 of the Act, she has established that proposition. *Horsley–Layman*, 968 S.W.2d at 536. Even so, because Knie was acting pro se from the time suit was filed until after the expert reports were due, the subsequent mistake of law of her attorney does not retroactively satisfy the mistake or accident requirement of subsection (g). We find the reasoning in *Carey Crutcher,*

*Furr* and *Nguyen* sufficiently analogous to preclude our finding that the trial court abused its discretion in denying a 30–day grace period. We overrule Knie's points 3, 15 and 17b.

Knie's next point challenging the dismissal under section 13.01(e) is point five, in which she argues the trial court's dismissal was contrary to the purpose of section 13.01, which is to reduce the number of frivolous suits, not to keep meritorious claims from being litigated. Knie's argument consists of the conclusory statement that her catastrophic injury shows that "[c]learly, this case qualifies as one of the 'good medical malpractice lawsuits' " the legislature did not intend to bar by the Expert Report requirement of the Act. This argument is predicated on the idea that catastrophic injuries cannot result from medical procedures in the absence of medical malpractice. The legislature failed to recognize that proposition in adopting the statute and we cannot take judicial notice of it. Knie has failed to show that the statute served as a bar to her assertedly meritorious claim or that it was not narrowly tailored to effect a legitimate legislative purpose. The record clearly shows her own default in satisfying the statute's requirements caused the dismissal of her claim. We overrule her fifth point.

Similarly, her eighteenth point asserts that dismissal was error because she "substantially complied" by providing an expert affidavit within 180 days of the defendants being served. Neither this court or the trial court is free to rewrite the law enacted by the legislature. The trial court did not abuse its discretion in applying the statute as written. *State Democratic Executive Committee v. Rains*, 758 S.W.2d 227, 228 (Tex.1988). We overrule her eighteenth point.

In her thirteenth point, Knie assigns error to the trial court's refusal to allow her expert's report tendered in June 1999 to be deemed timely filed. The argument in support of this point consists of a sum-

mary of the expert's report and citation to *McClure* and *Horsley–Layman, supra.* Each of those cases concerns the application of subsections (f) and (g) discussed above. Neither case discussed a trial court's authority to deem a late report as timely outside the extension periods authorized by the statute. Because we addressed the applicability of subsections (f) and (g) under Knie's third point, we must overrule this point.

Knie's fourteenth point assigns error to the trial court's "not allowing Dr. Hays to be approved as [her] expert." We have found nothing in the record to show that the trial court expressed an opinion on Dr. Hays's qualifications to serve as Knie's expert. Section 14.01 of the Act establishes qualifications for expert witnesses. Appellees' motion to dismiss was not based on Dr. Hays's qualifications or lack thereof. Consequently, there is no ruling of the trial court on this issue on which error can be predicated. We overrule Knie's fourteenth point.

Knie's next group of points challenge the constitutionality of section 13.01 of the Act. The specific challenges are: point 6 violation of right to open courts, point 7 denial of equal protection, point 8 denial of due process, point 9 denial of her right of remonstrance, and points 10 and 11 violation of her right to free speech.

■■■ We initially address the Hospital's claim that this issue may not be considered because Knie failed to serve a copy of her petition on the Attorney General as it argues was required. The Hospital cites this court's opinion in *Allen v. Employers Casualty Co.,* 888 S.W.2d 219, 222 (Tex. App.—Amarillo 1994, no writ), for the proposition that the Attorney General must be served whenever the constitutionality of a statute is challenged. *Allen* relied on *Estate of Ross,* 672 S.W.2d 315, 317 (Tex.App.—Eastland 1984, writ ref'd n.r.e), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1844, 85 L.Ed.2d 143 (1985), which did indeed state that proposition, citing former Article 2524–1, sec. 11 of the Texas Revised Civil

Statutes Annotated (Vernon 1965); *Commerce Independent School District v. Hampton,* 577 S.W.2d 740 (Tex.Civ.App.— Eastland 1979, no writ); and *Commissioners Court of Harris County v. Peoples National Utility Company,* 538 S.W.2d 228 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.). Further examination shows that Article 2524–1 was at that time, the Declaratory Judgment Act. That act, like the current version of the act, Tex. Civ. Prac. & Rem.Code §§ 37.001–.010 (Vernon 1997), required service on the Attorney General when a party sought to have a state statute declared unconstitutional *in a proceeding brought under the act.* The *Hampton* and *Harris County* cases were declaratory judgment proceedings applying that statute.

In *Estate of Ross,* the Eastland court incorrectly applied the requirement of service on the Attorney General in a nondeclaratory judgment proceeding. It corrected that error in *Alexander Ranch v. Central Appraisal Dist.,* 733 S.W.2d 303 (Tex.App.—Eastland 1987, writ ref'd n.r.e.), *cert. denied,* 486 U.S. 1026, 108 S.Ct. 2005, 100 L.Ed.2d 236 (1988), by specifically holding that the requirement of service on the Attorney General to challenge the constitutionality of a state statute is limited to actions brought under the declaratory judgment act. *Id.* at 305. We recognized this distinction recently in *In re Marriage of Richards,* 991 S.W.2d 32, 38 (Tex.App.—Amarillo 1999, pet. dism'd). To the degree *Allen* stands for the proposition that the Attorney General must be served as a predicate to challenge a state statute in an action not brought under the declaratory judgments act, we expressly overrule it.

■■■ We must next determine which of Knie's constitutional challenges were presented to the trial court and thus preserved for our review. Preservation of a complaint for appellate review requires a timely request, objection or motion that states the grounds for the ruling the party

seeks with sufficient specificity to make the trial court aware of the complaint. Tex.R.App. P. 33.1(a)(1). *See also Osterberg v. Peca*, 12 S.W.3d 31 (Tex.2000) (holding procedural rules governing preservation of error applicable to constitutional challenges).

Knie's petition did not present any challenges to the constitutionality of the Act. At the hearing on the motion to dismiss and competing motion for extension of time to file the expert reports, Knie's attorney argued the Act denied her rights of equal protection and due process. In her motion for new trial filed April 21, 1999, Knie raised the issues of free speech, open courts, equal protection, and due process. In *Osterberg, supra,* our supreme court held that post-trial presentation of constitutional challenges is sufficient to preserve such claims. Her claim for denial of a "right of remonstrance" was never presented to the trial court in any form and has not been preserved for review.

■■■ With regard to Knie's claimed violations of her equal protection and due process rights, we find the Texarkana Court of Appeals' holding in *Horsley–Layman* dispositive. The court held that because the prosecution of a medical malpractice case required the presentation of expert witness testimony at trial, *see, e.g., McCombs v. Children's Medical Center of Dallas*, 1 S.W.3d 256, (Tex.App.—Texarkana 1999, no pet. h.), the expert report requirements of the Act did not violate plaintiffs' rights to due process or equal protection. *Id.* at 537. Knie's open courts challenge, alleging the expert report requirement denies indigents access to Texas courts as guaranteed by Article I, Section 13 of our state constitution, is a recasting of her equal protection argument and must be overruled for the same reason. Moreover, the record shows that the expert report she sought to file in the trial court was obtained without charge. This significantly undermines her claim that the expert report requirement denies her access to our courts.

■■■ Her final points, numbered ten and eleven, claim the Act denied her rights to free speech under the state and federal constitutions. The only authority cited in support is *Murphy v. Phillips*, 63 S.W.2d 404, 408 (Tex.Civ.App.—San Antonio 1933, writ dism'd), holding that it is the duty of the courts to declare statutes in conflict with the bill of rights null and void, and the criminal case of *Puckett v. State*, 801 S.W.2d 188 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd), *cert. denied,* 502 U.S. 990, 112 S.Ct. 606, 116 L.Ed.2d 629 (1991), holding "the right to petition for redress of grievances is inseparable from the right of free speech." *Id.* at 192.

As with any statute, we begin with the presumption of constitutionality. Tex. Govt.Code Ann. § 311.121 (Vernon 1998). Knie has failed to present any argument challenging the legislative purpose of reducing litigation of unmeritorious medical malpractice claims. Nor has she even attempted to show that the expert report requirement of the Act is not narrowly tailored to effect that purpose. Because her argument in support fails to discuss the standards for reviewing statutes claimed to violate first amendment rights or discuss the application of those standards to the statute before us, we find she has failed to overcome the presumption of constitutionality. We overrule Knie's tenth and eleventh points.

Finding no reversible error in the judgment of the trial court, we must, and hereby do, affirm that judgment.